Mr. Morales? Yes, Your Honor. You may proceed. May it please the Court. When a district court uses the words could have to resolve a material fact issue in favor of the moving party, the district court necessarily violates the well-established standards for reviewing summary judgments. And that is precisely what the district court did here. A fundamental question in this case is why did a statutorily required safety interlock not shut down boiler 840 in Beaumont, Texas, when its combustion fan failed in January of 2016? One explanation is that the interlock on that boiler was defective. It was defective on the date of the leak, and it was defective on the date of the inspection 82 days before. And had Continental's inspector performed its inspection according to the boiler laws and rules, it would have discovered that faulty, defective interlock at that time. Another potential explanation is that at some time, somebody walked into the boiler room and shut off that interlock after the inspection. The district court resolved this conflict on page 7747 of the record, and that's the district court's opinion. And the court stated that someone, some mystery person could have, and that was the court's language, could have walked into the boiler room and shut off the interlock, temporarily disengaging it, which allowed the boiler to continue to run even though one of its combustion fans failed. The problem with this inference is, one, it was made in favor of the moving party, but two other things. One, there is no evidence to support this mystery person shutting off the interlock before the leak and in between the inspection. In fact, Continental did not even make that assertion to the trial court. But even more fundamentally, there is direct evidence undermining this mystery person. The school district's corporate representative, who was the school district's maintenance director, testified that there were no alterations or modifications to the boiler, to the switches, or to the settings between the date of the inspection and the date of the leak. The district court just ignored this evidence and inferred that someone may have or could have switched it off. This court was presented with a similar set of facts under the Cooper-Tyre v. Farice case. That case involved what was the effective date of a separation agreement. There, the district court granted summary judgment against Cooper and stated that it was a separation agreement because they somehow found out that the other party had signed a disparaging affidavit before executing that agreement. And the court, looking at the well-established summary judgment procedure, said, we review all evidence and review all or take all reasonable inferences in favor of the non-moving party. And in that case, this court reversed summary judgment because the district court made an inference in favor of the moving party. That is precisely what the district court did here. They resolved the issue as to whether anything had changed in that boiler room between the date of the inspection and the date of the leak. And in doing so, it was unsupported by the record, and again, it was inconsistent with the testimony from Mr. McClellan, who was the independent school district's corporate representative. Now, importantly, that's not the only favorable evidence to the plaintiffs that the district court ignored when granting summary judgment for Continental. Specifically, there is a question about whether the interlock complied with the Texas boiler laws and rules. Section 65.603 of the boiler laws and rules state that all boilers shall have a functioning interlock such that if air supply is disrupted, then the boiler automatically shuts down. The Texas Department of Licensing and Regulations Chief Inspector Robbie Trout confirmed that is what the statute says, and that's what it means. If there's a disruption in the airflow, then the interlock immediately shuts down the boiler. There were two witnesses testified, or not testified, but provided statements in an investigative report. One was Mr. Charlon. He was the first person from the TDLR to investigate the leak, and another one was Robbie Trout, the TDLR's chief inspector, or chief boiler inspector, and they both stated that the interlock on boiler 840, instead of connecting the boiler to the fans, connected the boiler to the light switch. Now, that creates a conflict in the evidence as to whether the boiler complied with the Texas boiler laws and rules. The court ignored that testimony from Mr. Trout and from Mr. Charlon to conclude that the interlock was functioning properly, but for the mystery person shutting it off. Because that favorable evidence was ignored by the district court in granting summary judgment, it's another basis to reverse and remand. There's another important dispute, factually, and that is whose responsibility is it to ensure that the interlock is working? Mr. Trout testified that it is the inspector's job, upon inspection, to make sure that the interlock is working properly. Section 65.51 of the administrative code says, unambiguously, that inspectors are in charge with enforcing all aspects of the boiler laws and rules at all times when conducting inspections. Yet the district court ignored that evidence. And, in fact, even Mr. Nestor, the inspector's boss, Mr. Sheenberger, testified that Mr. Nestor was trained and expected to make sure that the interlock was working properly before green lighting it for safe operation. Yet the district court ignored that evidence that was favorable to the plaintiffs and just concluded, based on inapplicable agency comments, that it is only the obligation of the owner and operator to ensure a working interlock. Those are just two examples, or three, where the district court ignored evidence that was favorable to the non-moving party and, as a result, like the court did in the Cooper case, we'd ask the court to reverse and remand. What did Trout say about Continental's inspector and what he did with this interlock? Yeah, so Mr. Trout's testimony is a little bit conflicting. On the one hand, he prepared a report immediately after the leak, which he was required to do under Texas law. And there, he simply identified what was the cause of the leak. And he said it was a combustion fan failing and then a flame rolling out of the boiler such that it created negative pressure that allowed the carbon monoxide to be pumped into the school. And, importantly, his statements in the TDLR report make clear that the interlock failed. At his deposition, he changed his tune a little bit. At that point, he said that Mr. Nestor was not to be blamed, that he didn't have any criticism for Mr. Nestor's inspection. The challenge is that the district court credited the portions of Mr. Trout's testimony that were favorable to Continental but ignored the testimony or statements that were favorable to the plaintiffs. And, for example, Mr. Trout testified unambiguously that it was Mr. Nestor's responsibility to ensure that the interlock functioned. Well, I guess the district court did what you're doing because there's some portions of Trout's testimony that you want to credit and others you want to discredit. The part where he said the inspector didn't do anything wrong, that's the part you wanted the district court to discredit. Correct. But then there are other parts of what Trout said that you're fine with. Well, that's right. And I think the difference here is that the standard of review, right? The standard of review is that all inferences are made in favorable of the non-moving party. And each time that there was a conflicting piece of testimony or conflicting pieces of testimony, instead of resolving them in favor of the plaintiff, the court resolved them in favor of the defendant. And that is a violation of the well-established rules. Now, importantly, there is also this conflicting evidence as to whether Mr. Nestor's inspection complied with the Texas boiler laws and rules. Section 65.2-27 of the Texas Administrative Code says that an external inspection, which is the type that Mr. Nestor did here, shall be done if possible while the boiler is in operation. Now, importantly, the evidence is conclusive here that not only was it possible for Mr. Nestor to fire a boiler while he was conducting that operation, but that it would have been easy. The testimony is it would have taken 15 to 20 minutes, that the maintenance personnel would have happily fired the boiler had Mr. Nestor asked, but he didn't. Instead, the only thing that Mr. Nestor did to determine that there was a functioning interlock was to see that there was some conduit between the fans and the boiler. In our brief, we use the example that just because a lamp is plugged in does not mean that the lamp is working. But the court simply ignored the unambiguous text of the Texas Administrative Code, that is, you shall conduct the operation if possible while it's in operation, or conduct the inspection if possible while it's in operation, and just credited Trout's testimony that he didn't need to do that. And by crediting a witness's testimony over the unambiguous statutory text, it was another example of how the court violated the well-established summary judgment procedures. Now, in addition, there is an issue about Texas administrative law. The court relied on some comments from the TVLR in 2015 about whether certain items in the boiler law and rules are checklist items and whether they expand the obligations of inspectors. And Continental relied on that comment at the district court level, and in the court's opinion, the district court relied on those comments. When you look at the timeline of those comments in relation to the interlock requirement, it is clear that they're inapplicable. The interlock requirement that's the crux of this case has been in the boiler laws and rules since at least 2007. The comment that the district court relied on happened in 2015. So clearly, comments in response to public comments for new developments are not applicable to an interlock provision that has been in the law since 2007. But even if it were applicable, Texas administrative law makes clear through the Texas Supreme Court that agency comments are entitled to zero deference if they are contradicted by unambiguous statutory text. Here, the statutory text says, at 65.51, that inspectors are charged with enforcing all aspects of the boiler laws and rules. And because the interlock is one of those aspects, it was Mr. Messer's responsibility to ensure a working interlock. That is supported by the statements from Mr. Trout and also the statements from Mr. Sheenberger. Now, Your Honor, the final point we make in our brief is that aside from ignoring favorable evidence to the plaintiffs, aside from resolving evidentiary conflicts in the moving party's a heightened causation standard that is inconsistent with this court's precedents. Specifically, the court required that the plaintiff prove the exact sequence of events were foreseeable in order to prove causation. Specifically, the court stated that we needed to prove that it was foreseeable to Mr. Nestor that somebody would shut off that switch on the day of the leak. Importantly, there's no evidence to support that that happened. There's contrary evidence. But then the court also said that we'd have to show that it was reasonably foreseeable to Mr. Nestor that a plastic fan would cause the combustion fan to fail. Now, in the Western Hills bowling case, this court was confronted with a similar argument. The question there was whether a delayed insurance investigation was the proximate cause of a later arson. And the defendant there argued there's no way they could show that a delayed investigation was reasonably foreseeable that that would cause a later arson. And this court said, no, that's not how thinly you cut the foreseeability question. It is not essential, this court said, to show the precise manner of the infliction of sequence of circumstances. Instead, if you can show that there was reasonably foreseeable that the general harm that took place would occur from the conduct, then that is enough to show that it was reasonably foreseeable. What do you say to the argument that without expert witness testimony, you wouldn't be able to prosecute your claim anyway, and your expert, the one you designated, was excluded. Now you're without one. Right. What do you say to that argument? Sure. There is expert testimony in this record to support causation. We don't really dispute that an expert might be necessary because of the technical natures of this case. However, the chief inspector for the Texas Department of Labor, I'm sorry, of Licensing and Regulations, Robbie Trout, his statements in his state-mandated report provide the causation necessary to meet our burden. So even if expert testimony is required, we have it in Trout, and the plaintiff's designated Mr. Trout as an expert. That part of the testimony you want us to credit. Of course. That's right. And look, I don't think it all goes back to identifying the proper standard of review and applying it. There's no serious dispute that the summary judgment standard of review states that all reasonable inferences shall be made in favor of the nonmoving party, and all evidentiary conflicts shall be resolved in favor of the nonmoving party. So to the extent, and there is inconsistency between Trout's report and his deposition, those evidentiary conflicts, those evidentiary jump balls, as it's used in the briefing, need to go to the nonmoving party. Otherwise, the court violates the well-established summary judgment standards. And for those reasons, Your Honor, we would ask the court to reverse and remand our reserve unless there's any other questions. The rest of my time. Thank you, Your Honor. Thank you. Good morning. I am David Timmons of Hush Blackwell. I'm here on behalf of Continental Casualty Company, which is asking the court to affirm the district court's summary judgment. May it please the court. This case is procedurally fairly straightforward, but the context is critical to understanding the issues in this appeal. The carbon monoxide release here occurred in late January 2016. The inspection that plaintiffs claim for negligence revolves around occurred November 5, 2015, so some 84 days before the carbon monoxide release. The inspection that was performed was what's called a jurisdictional inspection, which is governed by the Texas Boiler Law and Rules, and it's a state-mandated inspection that's an inspector who is certified by the state but employed by an insurance company who performs the inspection per the dictates of the Texas Boiler Law and Rules and then reports back to the TDLR with respect to whether any violations of those rules have been found. In our motion for summary judgment in the district court, we argued that the plaintiffs could not show that any conduct by Continental's inspector actually caused the CO release. And the evidence before the court was that the boiler had been operated for some period of time after the November 5, 2015, inspection before the CO release, and the evidence was that it would have been operated for 20-some days during that period. At the same time that we moved for summary judgment, we also moved to exclude the plaintiff's expert addressing the standard of care and causation, Bruce McDaniel. The plaintiffs responded to that motion for summary judgment by relying exclusively on Mr. McDaniel's testimony to establish standard of care, breach of the standard of care, and causation. The district court struck the expert's testimony in a lengthy opinion as unreliable and, based on the striking of that expert's testimony, concluded that there was no evidence to establish causation and that, therefore, the plaintiffs had failed to satisfy their burden to show a genuine issue of material fact. Now, on appeal, plaintiffs don't challenge the exclusion of that expert. So Mr. McDaniel's testimony, which was the sole focus of their response to the motion for summary judgment, is no longer at issue. Counsel, your opponent cited the – I believe Trout – the report that he thought would support his case. Why would that not be a substitute expert opinion that the court could consider? It's – the simple answer to your question, Judge Englehart, is that Chief Inspector Trout's testimony was – didn't address causation at all. To the extent that Chief Trout could be interpreted to have addressed anything, it would have been a very generic statement that the inspector has to confirm compliance with rules, but there was no testimony by Chief Inspector Trout as to how any deficiencies occurred in that inspection or how the inspection actually led to the carbon monoxide release that occurred some 84 days later. Now, in further addressing that, I'll note, Your Honor, that the defendant – excuse me, the plaintiff's position in this appeal has been very interesting because the position they took in their initial brief was that Chief Trout was not actually testifying as an expert. They very clearly stated on page 22 of their initial brief, quote, but Trout did not testify as an expert on what a reasonably prudent inspector, the legal standard for proving negligence, should do. And in fact, they cited Trout's deposition testimony in which they asked Trout whether he was testifying as an expert, and he said, I am not testifying as an expert. Then, after we raised the issue of the need for expert testimony in our response brief, the plaintiffs came back in their reply brief and flipped completely 180 degrees on whether Trout was testifying as an expert or not. At page 15 of their reply brief, they said Trout, who was designated as an expert by Continental, confirmed that this was Nestor's affirmative responsibility to confirm a working interlock. Simply because Trout was designated as an expert by Continental does not mean that his testimony cannot establish the standard of care, close quote. So you can see the inconsistency in their position, but regardless of whether you believe Trout was testifying as an expert or not, there is no testimony by Trout that establishes that the inspection was faulty in some way and that that fault in the inspection actually caused the carbon monoxide release that occurred 84 days later. In fact, to the contrary, Trout's testimony was that he found no problem with the inspection, had anything to do with the subsequent carbon monoxide release. So plaintiffs seem to be relying on Trout's general statement that the inspector is obligated to ensure that regulations are being complied with. To be charitable and to be frank, that testimony does not establish a standard of care. It just says what the general obligations of an inspector are. It doesn't establish what the standard of care would have been for an inspector in this circumstance. But Trout also testified that he found no problem in both his report and in his deposition testimony said he found no fault with the inspection itself. He also said that an inspector is not required to activate the boiler, and the plaintiffs have tried to establish that there is some inconsistency in Mr. Trout's testimony on that. But even if there is an inconsistency in Trout's testimony between what the boiler law rules say, which is that the inspector should conduct the inspection if possible while the boiler is being activated, their own expert acknowledged that Mr. Trout was the ultimate authority on that and gave credence to Mr. Trout's testimony that the inspector is not obligated to activate the interlock. Even if you take all that and create an inference in favor of the plaintiffs on that case, it doesn't have anything to do with causation. There is no testimony whatsoever in this case about what would have happened if Mr. Nestor, the inspector, had gone in and done what the plaintiffs say that he should have done, which is activate the boiler. In fact, their own expert acknowledged that Mr. Nestor could have done exactly that. He could have gone in and turned on the boiler or had the boiler turned on, and he could have looked at the interlock and he would have found no problem with it at all. But there is no testimony whatsoever in this case that anything that Mr. Nestor did had anything to do with the subsequent carbon monoxide release. And as a result of that, there is just no evidence on which any court could conclude that the causation, that the plaintiff's obligation to establish a genuine issue of material fact on causation had been satisfied. Trout did not testify that the inspector should have done something and did not. He didn't testify about what would have happened if the inspector had done what the plaintiffs alleged he should have and activated the boiler, and he didn't testify about how anything the inspector did caused the CO release. At the end of the day, there is no expert testimony whatsoever that would satisfy the plaintiff's obligation to provide expert testimony to establish the standard of care, the breach of the standard of care, and causation. The plaintiff's position in this appeal is kind of interesting because it's similar to the position that was rejected by the Houston Court of Appeals in the Rodriguez v. Centerpoint case, which was a 2018 case that cited the briefs. There the plaintiff's expert on standard of care and causation was excluded altogether, and the plaintiffs responded that by arguing that they could use the testimony of a third party, an employee of the defendant, to establish the standard of care and causation. The Houston Court of Appeals looked at that testimony and said we actually do think that that employee testified as to the standard of care, but nothing the employee said had anything to do with causation, and so that court concluded that they had failed to satisfy their burden of showing a genuine issue of material fact and affirmed the summary judgment. That case is kind of interesting because the employee's testimony in that case was the detailed standard of care that the, in that case it was an electrical overload issue, that the electrician was supposed to comply with in performing the service that he was providing. The court gave credence to that and said that established the standard of care, but because that employee had also said, and by the way, the employee who was providing the standard of care, the court said it didn't establish a breach of the standard of care and didn't satisfy the plaintiff's obligation under seal text to provide information that would allow the summary judgment to be denied. Now, the plaintiff's position in this appeal seems to be that the court can disregard that evidentiary obligation because it can be granted an inference simply from the fact that the carbon monoxide release occurred, that there was somehow causation between the inspection itself and the subsequent carbon monoxide release. That's taking the concept of an inference way too far. Under seal text, they have the obligation to produce evidence to actually warrant an inference. Seal text and its progeny don't allow a court to simply assume an inference from the circumstances, especially where there's expert testimony that's needed. So in this case, the absence of expert testimony is itself outcome determinative of this appeal, but even if you didn't accept that, there is no evidence whatsoever as to causation, even if you're looking outside the context of expert testimony. And in everything that Mr. Morales said, you heard a discussion of what the standard of care might be, but the district court's summary judgment was based on the lack of evidence of causation. And that lack of evidence of causation is not cured by even the inference that Mr. Morales is asking this court to take. The inference that he's asking is, well, there was a carbon monoxide release that occurred in late January, and there was an inspection that occurred before that, and the inspector is supposed to look at the interlock and determine whether it's working or not, and therefore you can simply assume by inference causation between the two of them. But there's no testimony from anyone that there was a problem with the interlock. There's no explanation from the plaintiffs about how the testing of the interlock would have revealed a problem with it. There's no testimony from anybody in the case about how defects in the inspection would have actually led to the carbon monoxide release, despite the fact that the interlock, that the system was apparently working for the days in between those two events. There is simply a complete failure of proof on the issue of causation. Now, as this Court is aware, the concept of proximate cause has two concepts. It's both cause in fact and foreseeability. And cause in fact requires evidence that the Defendant's Act was a substantial factor in bringing about the harm at issue, and that absent that Act, but for the Act, the harm would not have occurred. The case law is clear that cause in fact is not satisfied if the Defendant's Act is no more than furnish a condition that makes injury possible. That's the IHS Cedars case from the Texas Supreme Court that we cited in our briefs. The plaintiffs don't offer any evidence at all that the inspector did something wrong and that conduct resulted in the CO release, so they can't satisfy that burden. Texas law requires that they provide an explanation of how that conduct was in fact the cause in fact of the event. That's the IHS Cedars case again, which was a case dealing with a negligent discharge from a mental health care facility in which the plaintiffs alleged that that improper discharge caused the plaintiffs to be in a car wreck the next day. The Texas Supreme Court found that where the experts said that the conduct proximately caused the injury, but didn't explain how the conduct caused the injury, that was not sufficient to satisfy the plaintiffs' obligation. And here, the plaintiffs are asking the Court to make a similar inference as the theory that was rejected in this case. Just based on the fact that there was an inspection and there was a later CO release, they asked this Court to ipsy-dixit determine that there was in fact causation between the two of them, but in the absence of any evidence, expert or otherwise, to establish that, they cannot satisfy the cause in fact obligation on summary judgment. Here, plaintiffs don't explain what Nestor should have done during the inspection, how it would have revealed a problem with the boiler, and how that problem caused the injuries. In the absence of an explanation of that, they can't satisfy their burden. Now, the last thing that I want to address is the issue that Mr. Morales briefly addressed toward the end of his argument, which was a district court's conclusion that the interlock isn't the inspector's obligations in the first place. The district court's conclusion was based on a public comment that was made in May 2015 in the Texas Register at the time that the TDLR was amending the Texas boiler rules, and it dealt specifically with section 65.603, which is the interlock requirement. Now, the interlock requirement in section 65.603 is not phrased as a testing obligation. It is a simple statement that when you design, basically when you design a boiler room, there has to be an interlock between the fans and the boiler. In May of 2015, when they were amending that section, there was a public comment raised about the fact that that went beyond the knowledge of the normal inspector. And in response to that, the TDLR said that section, 65.603, is not intended to expand the list of items subject to inspection, and the obligation that was stated in that section was a direct responsibility on the owner or operator and not on the inspector. This court, in evaluating the obligations of the inspector, is entitled to look to those public comments. If you look at the Rodriguez versus Service-Lloyds case, the Texas Supreme Court in 1999 specifically said that it could, in interpreting an agency rule, look to the public comments and responses in determining the agency's intent in drafting that rule and in determining the scope of the duty. So as applied to this case, taking into account the public comments that were made in 65.603, the only conclusion is that that section and the interlock requirement is not an obligation of an inspector, but is an obligation of the owner-operator who are designing and operating the boiler rooms. The inspector's obligations do not extend to that. And as a result of that, there can't be a complaint that Mr. Nestor somehow failed to perform an aspect of a test of the interlock that is not actually required by the Texas boiler law and rules. In conclusion, because the district court was correct in concluding there was no evidence to create a fact issue regarding causation, we ask that the summary judgment be affirmed. Thank you, Mr. Chairman. Rebuttal. Thank you, Your Honor. Your Honors, importantly, Mr. Timmons, like the district court, did not say anything about what I call the no alterations evidence. And that is the undisputed testimony from the school district's corporate representative, who is also the maintenance director, that nothing changed between the date of the inspection and the date of the leak. That is critical because it is in the chain of inferences to create causation. Now, importantly, we are not flip-flopping our position with regard to Mr. Trout. Mr. Trout made two sets of statements in these cases. One, as a statutorily required investigation after the leak. And he did that, and that's on page 5556 of the record. And that was on February 3rd of 2016. The statute requires him to prepare a report to say what happened. He did that. Later on, he testified in a deposition. And in that deposition, he said, I'm not here as an expert, but our position is that when he wrote this report, he was doing it as a representative of the state of Texas. And his statements in this report are what govern. Now, we raise the point in a footnote. You know, whose responsibility it is to weigh Mr. Trout's credibility? We state that he sits on a board with the inspector here, Mr. Nester. Did that impact how he testified at his deposition? Certainly the trial court can't do that evidence weighing, nor should this court of appeals. That's something that the jury should determine. And in that report, he said, based on the evidence collected, this accident occurred as a result of two different failures. And I'm reading for accuracy. First was the non-operational status of the power ventilation fans. The second is due to the flame that was observed exiting the side of the boiler, which was caused from corrosion of the firebox refractory. His report confirms, without doubt, that the interlock did not function on the day of the leak. If it had, pursuant to the statute, the boiler would have shut down. No flame rollout would have occurred. Now, we know that the interlock did not work on the day of the leak. We know from the testimony that the district court ignored, that Mr. Timmons did not say anything about, that nothing changed in that boiler room, with the settings, the fans, the boiler, between the date of the inspection and the date of the leak. That is a necessary, that's an inference, that the condition of the interlock on the day of the leak was the same as the condition on the date of the inspection. And had Mr. Nester followed the rules when conducting that inspection, he would have located it. Now, with regard to the standard of care, what's different between this case and the Centerpoint case that my opposing counsel refers to, is here the statute identifies the standard of care. And to argue that an agency's comments can overcome the unambiguous statutory text flies in the face of Texas administrative law. Section 65.51 of the Texas administrative code says, inspectors are charged with enforcing all aspects of the Texas boiler laws and rules at all times while conducting inspections. Part of the boiler laws and rules is 65.603, that is a functioning interlock. For the TVLR to say, sorry, we don't agree with that unambiguous statutory text, that is for the owners and the operators, is directly inconsistent with the statute. Importantly, this statute actually has a section dedicated to owners and operators' responsibility. And the interlock requirement is not in that section. The unambiguous statutory text governs here. And comments that directly contradict it do not support that. Your Honor, in summary, the court misapplied the summary judgment standard. Judge Graves, you noted that there are some portions of Mr. Trout's testimony or statements that we want to credit. There's others that we don't. And that weighing is done in front of the jury. And there's no question about the summary judgment standards here. All reasonable inferences shall be resolved in favor of the non-moving party. The district court didn't do that. If there's one page in this record that the court can look to to see how the court misapplied the summary judgment standards, it's 7747. That is where the court applied a could-have inference in favor of the moving party. Because the court did that, we would ask the court to reverse and remand. Thank you. All right. Thank you, Mr. Morales. The court will take this matter under advisement. This concludes the matters we have on today's docket. And we are adjourned.